**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JULIAN LEMUS CASTRO,
      Petitioner,

      v.

WARDEN FLOWERS,
      Respondent.

No. 3:26-cv-225 (SRU)

## ORDER ON SECTION 2241 PETITION

*Pro se* petitioner Julian Lemus Castro ("Lemus Castro") is a sentenced inmate in the

custody of the federal Bureau of Prisons ("BOP"). Lemus Castro is currently housed at FCI

Danbury.[1] Lemus Castro filed a petition for writ of habeas corpus under 28 U.S.C. § 2241

asserting that the BOP has refused to apply his earned time credits ("ETCs") under the First Step

Act ("FSA"). *See* Doc. No. 1 at 1. Warden Flowers, the warden at FCI Danbury, responded to

Lemus Castro's petition. Doc. No. 13. Lemus Castro filed a reply to Flowers's response. Doc.

No. 14. Flowers filed a sur-reply.[2] Doc. 15. After carefully considering these materials and the

remainder of the record,[3] I **deny** Lemus Castro's petition for writ of habeas corpus.

---

[1] *See* Fed. Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc (Reg. No. 40540-510) (last visited Jun. 3, 2026). I may take judicial notice of content on the BOP's Inmate Locator website. *See United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).
[2] Under Local Rule 7(d), "[n]o sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause." D. Conn. L. Civ. R. 7(d). Respondent sought leave to file her sur-reply. *See* Doc. No. 15 at 1 n.1. I find good cause to permit Respondent to file a sur-reply because Petitioner has raised new arguments in his reply brief to which Respondent had no opportunity to respond. *See Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 2020 WL 401776, at *1 n.1 (D. Conn. Jan. 24, 2020) (concluding that good cause existed to file sur-reply "in light of the new evidence raised in Plaintiffs' reply").
[3] I consider the record to include material from Lemus Castro's federal criminal case, of which I make take judicial notice. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Glob. Network Comm'ncs, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## I.    BACKGROUND

Lemus Castro is a Columbian citizen.  *See* Doc. No. 1 at 1; Doc. No. 13-1 at 2 ¶ 2.  In May of 2021, the government indicted Lemus Castro with conspiracy to import cocaine in the Southern District of New York.  *See United States v. Lemus Castro*, 1:21-cr-00287 (S.D.N.Y.), Doc. No. 3.  Lemus Castro was "paroled"[4] into the United States to answer the federal indictment in January of 2023.  Doc. No. 13-1 at 2 ¶¶ 3-4.  Lemus Castro later pled guilty to conspiracy to import cocaine.  *See Lemus Castro*, 1:21-cv-00287, Doc. No. 60 at 1.  In March 2024, the district court sentenced Lemus Castro to 96 months' imprisonment followed by four years of supervised release.  *Id.* at 2-3.

On March 26, 2024, the date of Lemus Castro's sentencing, the sentencing court entered an "Order of Judicial Removal."  Doc. No. 13-1 at 2-3.  *See Lemus Castro*, 1:21-cv-00287, Doc. Nos. 59, 60.  The order states that Lemus Castro "shall be removed from the United States promptly upon his release from confinement" under 8 U.S.C. § 1228(c).  *Id.* at 4.  The order is accompanied by a "Notice of Intent to Request Judicial Removal," "Factual Allegations in Support of Judicial Removal," "Defendant's Plea Statement in Support of Judicial Removal," and a "Concurrence of United States Immigration and Customs Enforcement."  *Id.* at 5-13.

The Department of Homeland Security ("DHS") filed an immigration detainer against Lemus Castro on July 15, 2024.  *Id.* at 15.  The immigration detainer declares that DHS determined that probable cause exists to remove Lemus Castro based on "[a] final order of removal against [him]."  *Id.*

---

[4] "'Parole' is an administrative practice [by which] the government allows an arriving alien who has come to a port-of-entry without a valid entry document to be temporarily released from detention and to remain in the United States pending review of [] his immigration status." *Ibragimov v. Gonzales*, 476 F.3d 125, 131 (2d Cir. 2007).  A person may be "paroled" into the United States from another country to face pending criminal charges. *See Saleen v. Pullen*, 2023 WL 3603423, at *1 (D. Conn. Apr. 12, 2023) (describing a Pakistani citizen being paroled into United States to face federal criminal charges after he was extradited to the United States from Australia).

Lemus Castro filed a petition for writ of habeas corpus under section 2241 in this court on February 17, 2026.  Doc. 1.  In his petition, he maintains that the BOP "has refused to apply [his] [ETCs] because of an alleged final order of de[p]ortation that is lodged against [him]."  *Id.* at 1.  Respondent counters that Lemus Castro "is statutorily ineligible to apply time credits" under 18 U.S.C. § 3632(d)(4)(E) "because he is subject to a final order of removal."  Doc. No. 13 at 1 (emphasis omitted).

## II.    LEGAL STANDARD

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "A writ of habeas corpus under [section] 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  Thus, habeas petitioners may seek relief under section 2241 to challenge "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."  *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

Lemus Castro's contention that the BOP has refused to apply his ETCs under the FSA falls within the categories of challenges that may be brought under section 2241.  *See Wilson v. Warden Flowers, FCI Danbury*, 2025 WL 3719411, at *1 (D. Conn. Dec. 23, 2025) (alleging that "the BOP has refused to apply Petitioner's FSA credits and place him in a halfway house" are cognizable in section 2241 petition).  Lemus Castro "bears the burden of proving that he is being held contrary to law."  *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).  He "must satisfy his burden of proof by a preponderance of the evidence" because habeas proceedings are civil.  *Id.*

**III.    DISCUSSION**

The FSA provides that "[a] prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities . . . shall earn 10 days of [ETCs] for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  A prisoner "at a minimum or low risk for recidivating" who "has not increased their risk of recidivism" for two consecutive assessments "shall earn an additional 5 days of [ETCs] for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  *Id.* § 3632(d)(4)(A)(ii).

Those ETCs "shall be applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C).  However, "[a] prisoner is ineligible to apply time credits . . . if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act)."[5]  *Id.* § 3632(d)(4)(E).

The issue here is whether the Order of Judicial Removal entered by the sentencing court is "a final order of removal under any provision of the immigration laws" rendering Lemus Castro ineligible to "apply" ETCs under section 3632(d)(4)(E).  *Id. See* Doc. No. 13-1 at 2-4.  I conclude that it is.

Under the Immigration and Nationality Act ("INA"), "a United States district court shall have jurisdiction to enter a judicial order of removal at the time of sentencing against an alien who is deportable, if such an order has been requested by the United States Attorney with the concurrence of the Commissioner and if the court chooses to exercise such jurisdiction."  8

---

[5] "The term 'immigration laws' includes this chapter and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens."  8 U.S.C. 1101(a)(17).

U.S.C. § 1228(c)(1).  Section 1228(c)(2) outlines the procedures the government must follow before the sentencing court may enter a judicial order of removal.  *See* 8 U.S.C. § 1228(c)(2)(A)-(D).

The United States Attorney must first file a "notice of intent to request judicial removal" before the defendant pleads guilty or stands trial.  *Id*. § 1228(c)(2)(A).  "[T]he United States Attorney, with the concurrence of the Commissioner," must also file "a charge containing factual allegations regarding the alienage of the defendant and identifying the crime or crimes which make the defendant deportable" at least thirty days before sentencing.  *Id*. § 1228(c)(2)(B).

Once those materials are filed, the court must provide the defendant with "a reasonable opportunity to examine the evidence against him or her, to present evidence on his or her own behalf, and to cross-examine witnesses presented by the Government."  *Id*. § 1228(c)(2)(D)(i).  If the defendant "present[s] substantial evidence to establish prima facie eligibility for relief from removal under this chapter, the Commissioner shall provide the court with a recommendation and report regarding the alien's eligibility for relief."  *Id*. § 1228(c)(2)(C).  The court shall then "either grant or deny the relief sought."  *Id.*

If the defendant presents no such evidence or the court denies the relief sought by the defendant, "[t]he court may order the alien removed if the Attorney General demonstrates that the alien is deportable under this chapter."  *Id*. § 1228(c)(2)(D)(iv).  Notwithstanding the rights provided under section 1228(c)(2), the government and a removable defendant may enter into a plea agreement in which the defendant "waive[s] the right to notice and a hearing" and "stipulate[s] to the entry of a judicial order of removal from the United States."  *Id*. § 1228(c)(5).

"A judicial order of removal or denial of such order may be appealed by either party to the court of appeals for the circuit in which the district court is located."  *Id*. § 1228(c)(3)(A)(i).

Notably, "the order of removal shall become final and shall be executed at the end of the prison term in accordance with the terms of the order" after one of the following:  (1) the defendant executes "a valid waiver of the right to appeal the conviction on which the order of removal is based," *id.* § 1228(c)(3)(A)(iii); (2) "30 days after the date of the final order of removal," *id.* §1252(b)(1); or (3) the "final dismissal of an appeal from such conviction," *id.* § 1228(c)(3)(A)(iii).  *Id*. § 1228(c)(3)(A)(iii).

Here, the United States Attorney ("AUSA") filed a "a notice of intent to request judicial removal." *Id*. § 1228(c)(2)(A); Doc. No. 13-1 at 5.  The AUSA also filed "factual allegations in support of judicial removal "with the concurrence of the Commissioner."  Doc. No. 13-1 at 6, 13; 8 U.S.C. § 1228(c)(2)(B).  The factual allegations describe Lemus Castro's nationality, citizenship, immigration status, and the crime making him deportable.  Doc. No. 13-1 at 6; 8 U.S.C. § 1228(c)(2)(B).

Lemus Castro "waive[d] the right to notice and a hearing" and conceded his removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  8 U.S.C. § 1228(c)(5); Doc. No. 13-1 at 9-11 ¶¶ 2, 4, 6, 7, 8.  Lemus Castro "waive[d] any and all rights [he] may have to any and all forms of relief or protection from removal, deportation, or exclusion under the [INA], as amended, and related federal regulations."  Doc. No. 13-1 at 11 ¶ 8.  Additionally, he "stipulat[ed] to the entry of a judicial order of removal from the United States."  8 U.S.C. § 1228(c)(5); Doc. No. 13-1 at 11 ¶ 9 ("I agree to the entry of a stipulated order of removal pursuant to . . . 8 U.S.C. § 1228(c)(5).").  Finally, Lemus Castro "waive[d] any and all rights to appeal, reopen, reconsider, or otherwise challenge" the Order of Judicial Removal "in any U.S. or foreign court or tribunal."  Doc. No. 13-1 at 9-10, 12 ¶¶ 5, 13.

Based upon "all prior proceedings and submissions," including the submissions attached to the Order of Judicial Removal, the sentencing court concluded that Lemus Castro was "subject to removal from the United States" under the INA. Doc. No. 13-1 at 2-3. The sentencing court ordered Lemus Castro "removed from the United States promptly upon his release from confinement." Doc. No. 13-1 at 4; 8 U.S.C. § 1228(c)(2)(D)(iv) (permitting courts to order a defendant removed if the Attorney General demonstrates the defendant is "deportable").

The docket from Lemus Castro's criminal case does not show that he appealed his conviction, nor does Lemus Castro maintain that he did. *See generally United States v. Lemus Castro*, 1:21-cr-00287 (S.D.N.Y.); Doc. No. 1. Further, the record before me does not otherwise suggest that Lemus Castro appealed the sentencing court's Order of Judicial Removal. Absent such appeals, the sentencing Court's Order of Judicial Removal has long since become final under 8 U.S.C. § 1228(c)(3)(A)(iii). *See, e.g., Rizk v. Warden FCI Fort Dix*, 2023 WL 8271803, at *4 (D.N.J. Nov. 30, 2023) (concluding that, where it was unclear whether petitioner appealed the judicial order of removal, that order became final under section 1228(c)(3)(A)(iii) when the court of appeals dismissed petitioner's appeal of his criminal judgment).

Because the sentencing court's order of removal has become final, it renders him ineligible to "apply" ETCs earned under the FSA. 18 U.S.C. § 3632(d)(4)(E); *Cheng v. United States*, 132 F.4th 655, 659 (2d Cir. 2025) (noting that "the FSA, taken as a whole, makes clear that noncitizens with final orders of removal are not eligible for time credits.").

Lemus Castro's arguments to the contrary are unpersuasive. First, Lemus Castro maintains that he "should not be subject to a final order of removal without due process, including the Petitioner's appearance at any hearing." Doc. No. 1 at 3. Lemus Castro maintains that he was "never notified of any kind of immigration procedure nor any final order removal

proceedings before any immigration court or authorities." *Id.* at 7.  The record refutes those allegations.

Lemus Castro acknowledged receiving the Notice of Intent to Request Judicial Removal and the Factual Allegations in Support of Judicial Removal.  Doc. No. 13-1 at 9 ¶¶ 2-3.  Lemus Castro also acknowledged that his "rights in a judicial removal proceeding ha[d] been fully explained to [him] by [his] attorney."  *Id.* ¶ 5.  "After consultation with [his] counsel and understanding the legal consequences of doing so," Lemus Castro "knowingly and voluntarily waive[d] the right to notice and hearing" under 8 U.S.C. § 1228(c)(2) and "further waive[d] any all rights to appeal, reopen, reconsider, or otherwise challenge" the Order of Judicial Removal. *Id.*  Thus, contrary to Lemus Castro's assertions, he waived his right to be present at any hearing, was notified of the immigration procedures, and was aware of the removal proceedings.  Lemus Castro was not entitled to any other removal proceedings other than those provided to him.

To the extent Lemus Castro asserts that his waivers were invalid or that the judicial removal proceedings otherwise violated his constitutional rights, he must raise those constitutional infirmities before the Second Circuit Court of Appeals, not the district court.  Doc. No. 1 at 7; 8 U.S.C. § 1252(a)(5) (providing that a "petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal"); *Luya Liu v. Bureau of Citizenship & Immigr. Servs.*, 318 F. App'x 21, 23 (2d Cir. 2009) (relying on section 1252(a)(5) to conclude that the district court lack jurisdiction over challenge to final order of removal).

Second, Lemus Castro asserts that "ICE has not issued a final order, and has apparently lodged only a detainer."  Doc. No. 1 at 3.  Whether ICE has issued a final order is immaterial because the sentencing court issued a final order of removal.  The sentencing court's final order

of removal is sufficient, on its own, to render Lemus Castro ineligible to apply ETCs under the FSA. *See* 18 U.S.C. § 3632(d)(4)(E).

Third, Lemus Castro argues that "the BOP's decision to withhold [his] FSA time credits may violate the Due Process Clause." Doc. No. 1 at 6. "To state a due process claim, a plaintiff must allege a protected liberty or property interest." *Cheng*, 132 F.4th at 659. "[T]o have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Green v. McCall*, 822 F.2d 284, 288 (2d Cir. 1987)). A prisoner "must, instead, have a legitimate claim of entitlement to it." *Green*, 822 F.2d at 288 (internal quotation marks omitted) (quoting *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)).

Federal statutes, like the FSA, may create such claim of entitlement. *See Cheng*, 132 F.4th at 659 (noting that "a protected interest is created where state or federal legislation 'provides a statutory right to good time credit.'" (alteration adopted) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). However, the FSA itself provides that prisoners subject to a final order of removal are "ineligible" to apply time credits under the FSA. *Cheng*, 132 F.4th at 658-59; 18 U.S.C. § 3632(d)(4)(E). Thus, the very statute that might create a protected interest eliminates that interest, thereby defeating any due process claim. *See Cheng*, 132 F.4th at 659 (rejecting Taiwanese national's claim that denial of ETCs under section 3632(d)(4)(E) violated his due process rights).

Fourth, Lemus Castro argues that he "should be entitled to participate in the same programs as citizens and reap the benefits of that participation." Doc. No. 1 at 7. But nothing in the FSA prohibits Lemus Castro from "particiat[ing]" in the same programs as United States citizens. *Id.* Indeed, Lemus Castro, a Columbian citizen with a final order of removal, has

earned 225 ETCs by "participating" in FSA programming.  Doc. No. 1 at 1; 18 U.S.C. § 3632(d)(4)(A)(i) ("A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.").

The FSA permits prisoners of any immigration status to benefit from FSA programming. For example, prisoners can receive the following incentives:  extended phone and video conference privileges, additional visitation time, "[i]ncreased commissary spending limits and product offerings," "[e]xtended opportunities to access the email system," "[c]onsideration of transfer to preferred housing units (including transfer to different prison facilities)," and "[o]ther incentives solicited from prisoners and determined appropriate by the Director."  18 U.S.C. § 3632(d)(1), (3).  Lemus Castro is, in fact, "entitled to participate in the same programs as citizens and reap the benefits of that participation."  Doc. No. 1 at 7.

As a Columbian citizen with a final order of removal, Lemus Castro is not entitled to apply his ETCs toward early transfer to DHS custody.  *See* 18 U.S.C. § 3632(d)(4)(C), (E); *Cheng*, 132 F.4th at 659.  I understand Lemus Castro to argue that this violates his right to equal protection under the Constitution.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985).  To state an equal protection claim, Lemus Castro must allege that: (1) he was treated differently from similarly situated individuals, and (2) the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  Regardless of whether Lemus Castro was treated differently from similarly situated individuals, he has not alleged that any disparate

treatment of prisoners under the FSA is due to the "impermissible considerations" described above in *Diesel*.

Nevertheless, Lemus Castro may still allege a "class of one" equal protection claim by showing that (1) he "has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis" for the different treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Lemus Castro has not satisfied either requirement.

First, Lemus Castro is not "similarly situated" to prisoners who are United States citizens. In the Second Circuit, persons asserting a class of one equal protection claim "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006). This high degree of similarity is required "to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Id.* (internal quotation marks omitted) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)). Thus, Lemus Castro must point to the existence of a "similarly situated comparator," someone who is "*prima facie* identical" to Lemus Castro but who was treated differently. *See Jones v. Greene Cnty. Sheriff's Dep't*, 2025 WL 1166199, at *1 (2d Cir. Apr. 22, 2025) (internal quotation marks omitted) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)). "Prima facie identical" means that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" and "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Hu*, 927 F.3d at 92.

Prisoners who are United States citizens and prisoners who are subject to a final order of removal are not proper comparators. The FSA permits the former to apply FSA credits toward prerelease custody or supervised release; the latter cannot. *See* 18 U.S.C. § 3632(d)(4)(C), (E); *Petitpas v. Martin*, 2021 WL 6101469, at *2 (2d Cir. Dec. 22, 2021) (concluding that plaintiff's "proffered comparators—whether described generally as 'other inmates' or individually as specific inmates who have received risk level reductions"—were not proper comparators because they were not, like plaintiff, "sex offenders, which is a basic difference motivating their disparate treatment").

Rather, proper comparators to Lemus Catro are other prisoners who are subject to a final order of removal. *See Armour v. Lamont*, 2024 WL 4227010, at *5 (D. Conn. Sept. 18, 2024) (concluding that proper comparators to the plaintiff were "inmates who were sentenced after October 1, 2005," not inmates who were sentenced before October 1, 2005). Lemus Castro does not allege that he was treated differently from other inmates who are also subject to a final order of removal and, therefore, cannot establish the first element of a class-of-one equal protection claim. *See id.* (citing *Bazemore v. Otero,* 2020 WL 1027778, at *5 (D. Conn. Mar. 2, 2020) (rejecting class-of-one equal protection claim because plaintiff failed to show that he was "singled out for disparate treatment" among similarly situated inmates)).

Even if Lemus Castro could establish the first element of a class-of-one equal protection claim, he cannot establish the second element: that "there is no rational basis for the difference in treatment" between prisoners who are United States citizens and prisoners who are subject to a final order of removal. *Vill. of Willowbrook*, 528 U.S. at 564. The Second Circuit concluded in *Cheng* that there was a rational basis for the disparate treatment because "eliminating time credits reasonably reduces the risk that noncitizens with removal orders will flee and ensures that

noncitizens who enter or remain in the country illegally and commit felonies within the United States are required to serve their full prison sentences." 132 F.4th at 658. The same analysis applies here. Accordingly, Lemus Castro cannot establish an equal protection violation.

Lastly, Lemus Castro argues that the BOP's refusal to apply his ETCs toward prerelease custody or supervised release "has had the effect of lengthening the period of his incarceration." Doc. No. 14 at 4-5.[6] He frames this as an *Ex Post Facto* Clause challenge. *See id.* "Article I of the United States Constitution provides that neither Congress nor any state shall pass an 'ex post facto Law.'" *United States v. Ramirez*, 846 F.3d 615, 619 (2d Cir. 2017) (quoting U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1). "Most issues concerning the Ex Post Facto Clause involve claims, as here, that a law has inflicted 'a greater punishment, than the law annexed to the crime, when committed.'" *Abed v. Armstrong*, 209 F.3d 63, 65 (2d Cir. 2000) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)). "Such laws implicate ex post facto concerns because of 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Abed*, 209 F.3d at 65 (quoting *Weaver v. Graham,* 450 U.S. 24, 30 (1981)). Thus, for a law to violate the Ex Post Facto Clause, it: (1) "must be retrospective," meaning that it applies to events occurring before its enactment; and (2) "'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime[.]" *Lynce*, 519 U.S. at 441 (quoting *Weaver,* 450 U.S. at 29). Lemus Castro has not satisfied either requirement.

First, the FSA is not "retrospective" because it applies to events *after* its enactment. The FSA went into effect in December of 2018. *See United States v. Daniels*, 2019 WL 2354388, at

---

[6] Lemus Castro asserts this argument for the first time in his reply brief. Courts "generally do not consider issues raised in a reply brief for the first time" because the opposing party may not have the opportunity to respond to those issues. *In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006). I consider this argument because I permitted the government to respond to it. *See supra* note 2.

13

*2 (D. Conn. June 4, 2019) ("The First Step Act became effective on December 21, 2018[.]").

Lemus Castro began conspiring to import cocaine in September of 2019, after the FSA went into

effect. *Lemus Castro*, 1:21-cv-00287, Doc. No. 3 at 1 (indictment alleging that offense conduct

began in September of 2019). *See Daniels*, 2019 WL 2354388, at *2. Thus, in Lemus Castro's

case, the FSA is not retrospective because it is not being "appl[ied] to events occurring before its

enactment[.]" *Weaver,* 450 U.S. at 29. *Cf. Doe v. Pataki*, 120 F.3d 1263, 1285 (2d Cir. 1997)

(concluding that "application of the registration and notification provisions of the SORA to

persons who committed their offenses prior to the January 21, 1996, effective date of the Act

does not violate the Ex Post Facto Clause").

Second, the FSA does not "increas[e] the punishment for the crime[.]" *Lynce*, 519 U.S.

at 441. "A law that is merely procedural and does not increase a prisoner's punishment cannot

violate the *Ex Post Facto* Clause even when applied retrospectively." *Barna v. Travis*, 239 F.3d

169, 171 (2d Cir. 2001). Thus, the "essential inquiry demanded by the *Ex Post Facto* Clause" is

whether the law "had the effect of lengthening [Lemus Castro's] period of incarceration." *Lynce*,

519 U.S. at 442-43.

Here, the sentencing judgment committed Lemus Castro "to the custody of the Federal

[BOP] to be imprisoned for a total term of: 96 months." *Lemus Castro*, 1:21-cv-00287, Doc.

No. 60 at 2. Ultimately, Lemus Castro may serve less than 96 months in prison because he could

potentially receive good conduct credit under 18 U.S.C. § 3624(b)(1), for instance. Nonetheless,

the BOP's refusal to apply additional discretionary FSA credits toward Lemus Castro's prelease

custody or supervised release under 18 U.S.C. § 3632(d)(4)(E) does not lengthen his "period of

incarceration" beyond 96 months, less any good conduct credits he earns under section

3624(b)(1). *Lynce*, 519 U.S. at 443. *See also United States v. Walker*, 702 F. App'x 13, 15 (2d

Cir. 2017) (United States Sentencing Guideline amendment that "bar[red] a sentence reduction" did not violate the *Ex Post Facto* clause because defendant's "punishment was not increased beyond what was prescribed when his crime was committed."). Accordingly, Lemus Castro's *Ex Post Facto* challenge fails.

## IV.    CONCLUSION

For the reasons stated above, Lemus Castro has not met his burden "of proving that he is being held contrary to law." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011). Therefore, I **deny** his section 2241 habeas petition, doc. no. 1.

The Clerk shall enter judgment and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 4th day of June 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

15